IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CLEO MURDOCK,
Administratrix of the Estate of
RUSSELL ELSWICK,

                Plaintiffs,

v.                                              CIVIL ACTION NO. 2:18-cv-01339

KANAWHA COUNTY SHERIFF'S OFFICE et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants the Kanawha County Sheriff's Office and John Rutherford's Motion for Summary Judgment, (ECF No. 83), and Defendants Kenneth Gaddy and Christopher Lyons' Motion for Summary Judgment, (ECF No. 112).[1] For the reasons discussed more fully below, the Court **GRANTS** the Kanawha County Sheriff's Office and John Rutherford's Motion for Summary Judgment, (ECF No. 83), and **GRANTS** Defendants Kenneth Gaddy and Christopher Lyons' Motion for Summary Judgment, (ECF No. 112).

---

[1] Also pending is Defendants the Kanawha County Sheriff's Office and John Rutherford's Motion to Strike. (ECF No. 94.) These Defendants move to strike interested party T.W.'s Brief in Support of Plaintiff's Response Memorandum, (ECF No. 92), because T.W. is not a proper party to this action. T.W. is an heir to the estate of Plaintiff Russell Elswick but he is neither a named party nor has he sought to intervene in this case. Accordingly, the Court **GRANTS** Defendants' Motion to Strike, (ECF No. 94), and **STRIKES** interested party T.W.'s Brief in Support of Plaintiff's Response Memorandum, (ECF No. 92).

I.  BACKGROUND

Plaintiff Cleo Murdock ("Murdock" or "Plaintiff") brings this 42 U.S.C. § 1983 action on behalf of the estate of her deceased son, Russell Elswick ("Elswick"), against Defendants Kenneth Gaddy ("Sergeant Gaddy"), Christopher Lyons ("Corporal Lyons"), the Kanawha County Sheriff's Office, and John Rutherford ("Sheriff Rutherford"), in his capacity as Sheriff of Kanawha County, West Virginia. At around 6:00 a.m. on November 5, 2016, Kimberly Mitchell ("Mitchell") called 911 to report that she heard gunshots and that some of the bullets may have hit her trailer. (ECF No. 83–5 at 2.) She further reported that she believed her neighbor, Elswick, had shot the gun. (*Id.*) Mitchell did not see Elswick, but she did see a vehicle pull away shortly thereafter and drive towards Elswick's residence. (*Id.*)

At approximately 10:00 a.m., Corporal Lyons arrived to Mitchell's residence where he observed buckshot, from a shotgun, in the trailer. (ECF No. 83–7 at 2.) Corporal Lyons radioed to determine if there were any outstanding warrants on Elswick and discovered that he had a felony capias warrant issued for failure to appear and that he had previously been arrested for incidents involving firearms. (*Id.*) After learning this information, Corporal Lyons asked Sergeant Gaddy to join him on the scene. (*Id.*)

Once Sergeant Gaddy arrived, the officers made their way down Elswick's driveway, knocked on his door, and asked him to come outside. (*Id.* at 3.) Elswick opened a small window in the door and told the officers to leave and then proceeded to slam the window shut. (ECF No. 83–6 at 5.) The officers retreated to their vehicle, which was located in Elswick's driveway, for cover and continued to attempt to make contact with Elswick. (ECF No. 83–7 at 4.) Elswick did not respond to the officers attempts at contact, and the officers called to request additional units.

2

(ECF No. 83–6 at 5.) Once the additional officers arrived, Sergeant Gaddy threw a CS gas canister into the window of Elswick's residence, but Elswick still did not leave or respond to officers' attempts at communication. (*Id.*) However, Elswick did open a window and made a fanning motion. (ECF No. 83–7 at 5.) Around this same time, Corporal Lyons saw a box of shotgun shells inside Elswick's truck which was parked outside the residence. (*Id.* at 4–5.)

The officers continually attempted to communicate with Elswick, but he refused to respond. Amanda Hall, Elswick's cousin, was brought to the residence to attempt to get Elswick to come outside but Elswick never responded. (ECF No. 83–9 at 2.) Further, both Timmy Rhodes, Elswick's brother, and Murdock, Elswick's mother, were also on the scene and repeatedly asked Elswick to come outside and speak with the deputies. (ECF No. 83–20 at 2.) However, Elswick failed to respond. (*Id.*)

After Sergeant Gaddy and Corporal Lyons were on the scene for approximately three and a half hours, the decision was made to attempt to make entry into Elswick's home. (ECF No. 83–7 at 6.) The defendant officers attempted to use a bar to open the door, but it was barricaded shut. (*Id.*) Next, Sergeant Gaddy attempted to open the window in the front door to get the door unlocked while Corporal Lyons provided cover with his firearm and the gun mounted flashlight pointed towards the window. (*Id.*) The home was dark, and the only light was from Corporal Lyon's flashlight. (*Id.*) The officers continued attempting communication with Elswick and Elswick told the officers that they were going to have to kill him because he was not going to come outside. (*Id.*) Elswick also told the officers that they should put their guns down and leave. (*Id.*)

3

At the same time Elswick made these statements, Corporal Lyons spotted Elswick directly in front of him with his head sticking out from behind the couch wearing sunglasses and a toboggan. (*Id.* at 7.) Elswick continued yelling at the officers and Corporal Lyons spotted the barrel of a shotgun sticking straight up in plain sight near where Elswick was sitting behind the couch. (*Id.*) Corporal Lyons told Sergeant Gaddy that Elswick had a gun and the officers continued to try to communicate with Elswick and ask him to put down his weapon. (ECF No. 86–3 at 18.) After about five minutes, Sergeant Gaddy told Corporal Lyons that Elswick was going for the gun because Elswick moved the barrel of the gun down and moved his head to look around the couch. (ECF No. 83–7 at 8; ECF No. 86–3 at 21.) Sergeant Gaddy believed that Elswick was coming out from behind the couch with the gun. (ECF No. 86–3 at 23.)

Elswick was still behind the couch and both officers lost sight of Elswick's weapon. (ECF No. 83–7 at 8.) Corporal Gaddy shot first. (*Id.*) As the officers started to fire, Elswick stood up from behind the couch, took a step towards the officers, and the officers continued firing. (*Id.*) Elswick had the shotgun in his hands and then fell towards the officers and onto his shotgun because he had been struck by a single bullet to the head. (*Id.* at 9.) Once the officers gained entry to the residence, they observed that the stock of the shotgun was under Elswick's body and the barrel of the gun was near his head. (ECF No. 86–3 at 20.) The officers stated that approximately ten minutes elapsed between the time the officers attempted to open the door and when the shooting occurred. (*Id.* at 7.)

Plaintiff alleges that Elswick had suffered a traumatic brain injury several years prior and that he suffered serious mental health disabilities as a result. (ECF No. 86 at 2.) Further, Plaintiff

4

alleges that the officers were aware of that fact at the time of the shooting, but Defendants dispute that the officers had any knowledge of Elswick's disabilities at the time. (*Id.*; ECF No. 90 at 2.)

On January 2, 2020, the parties filed a joint proposed partial dismissal order advising the Court that Plaintiff agreed to dismiss all her claims against Sergeant Gaddy and Corporal Lyons as part of a full settlement between the parties. (ECF No. 36.) However, this settlement was rejected by this Court after many issues were raised by Plaintiff. (ECF No. 79.) Further, on May 26, 2021, the Court vacated its prior partial dismissal order and reinstated Sergeant Gaddy and Corporal Lyons as parties to this action. (ECF No. 111.)

On December 3, 2020, the Kanawha County Sheriff's Office and John Rutherford filed their Motion for Summary Judgment. (ECF No. 83.) Plaintiff timely responded, (ECF No. 86), and the defendants timely replied, (ECF No. 90). On June 18, 2021, Sergeant Gaddy and Corporal Lyons filed their Motion for Summary Judgment. (ECF No. 113.) Plaintiff did not respond. As such, these motions are fully briefed and ripe for adjudication.

## II. LEGAL STANDARDS

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. This rule provides, in relevant part, that summary judgment should be granted if "there is no genuine issue as to any material fact." Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). When evaluating such factual issues, the Court must

5

view the evidence "in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If a party fails to make a sufficient showing on one element of that party's case, the failure of proof "necessarily renders all other facts immaterial." *Id.* at 323.

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256. "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

### III.   DISCUSSION

Plaintiff's Amended Complaint alleges the following three causes of action: Count I for excessive force in violation of the Fourth and Fourteenth Amendments to the United States Constitution against Corporal Lyons and Sergeant Gaddy; Count II for "deliberately and indifferent policies, practices, customs, training, and supervision" in violation of the Fourth and Fourteenth Amendments to the United States Constitution against the Kanawha County Sheriff's Office and Sheriff Rutherford; and Count III for violations of the West Virginia Wrongful Death

Act against all Defendants. (ECF No. 45.) The Kanawha County Sherriff's Office and Sherriff Rutherford seek summary judgment on Plaintiff's Count I and Count II claims. Further, Corporal Lyons and Sergeant Gaddy seek summary judgment on Plaintiff's Count I claim and argue they are both entitled to qualified immunity for their alleged Fourth and Fourteenth Amendment violations. Each argument is addressed in turn.

### A. Count I for Excessive Force

Plaintiff's Count I claim alleges Corporal Lyons and Sergeant Gaddy used excessive force in violation of the Fourth and Fourteenth Amendments to the United States Constitution when they used deadly force against Elswick on November 5, 2016.[2] Corporal Lyons and Sergeant Gaddy argue they are entitled to qualified immunity for their actions.

To determine if an officer is entitled to qualified immunity, the Supreme Court mandated a two-part inquiry. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, as a threshold question, the court must ask: "whether the facts, taken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a federal right." *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014) (internal quotation marks omitted) (quoting *Saucier*, 533 U.S. at 201). "If no constitutional right would have been violated, even when the facts are viewed in the best light for

---

[2] Defendants do not specifically challenge Plaintiff's Fourteenth Amendment claim. However, it is well established that "[a] substantive due process claim challenging the use of force may lie only if neither the Fourth nor the Eighth Amendment applies." *Krein v. W. Virginia State Police*, No. 2:11-CV-00962, 2012 WL 2470015, at *6 (S.D. W. Va. June 27, 2012) (citing *Graham v. Connor*, 490 U.S. at 395). The United States Supreme Court has explicitly held that "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham*, 490 U.S. at 395; *see also United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.") Because due process provides an inappropriate framework for analysis, Plaintiff's Count I claim for violations of the Fourteenth Amendment to the United States Constitution is **DISMISSED**.

the injured plaintiff, the analysis ends; the plaintiff cannot prevail." *Jones v. Buchanan*, 325 F.3d 520, 526 (4th Cir. 2003) (internal quotations omitted). Only if the plaintiff has stated a violation of a constitutional right will the court proceed to the second prong, which asks "whether the right in question was 'clearly established' at the time of the violation." *Tolan*, 572 U.S. at 656 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

Accordingly, the Court must first determine if the actions of Corporal Lyons and Sergeant Gaddy were objectively reasonable. The Fourth Amendment's prohibition on unreasonable seizures includes the right to be free from "seizures effectuated by excessive force." *Schultz v. Braga*, 455 F.3d 470, 476 (4th Cir. 2006). To determine if an officer has used excessive force, the court must determine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). "The intent or motivation of the officer is irrelevant; the question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996) (citing *Graham*, 490 U.S. at 396–97).

The court is not permitted to use "the 20/20 vision of hindsight" and the reasonableness test must make "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. "The court's focus should be on the circumstances at the moment force was used and on the fact that officers on the beat are not often afforded the luxury of armchair reflection." *Elliot*, 99 F.3d at 642 (citing *Greenidge v. Ruffin*, 927 F.2d 789, 791–92 (4th Cir. 1991)). Further, "[a] police officer may use

8

deadly force when the officer has sound reason to believe that a suspect poses a threat of serious physical harm to the officer or others." *Elliot*, 99 F.3d at 642 (citing *Tennessee v. Garner*, 471 U.S. 1 (1985)).

Finally, the objective reasonableness standard "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015) (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. 1865). In order to perform this balancing, the Court looks to "the facts and circumstances of each particular case, with an eye toward three factors: the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Connor v. Thompson*, 647 F. App'x 231, 236 (4th Cir. 2016) (internal quotations omitted) (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. 1865).

Here, the actions of Corporal Lyons and Sergeant Gaddy were objectively reasonable, and no Fourth Amendment violation occurred. The majority of facts are undisputed, and Plaintiff appears to dispute only two factual allegations. First, Plaintiff argues that both the defendant officers were aware of Elswick's mental health problems at the time of the shooting. (ECF No. 86 at 2, 7.) Second, Plaintiff states that Elswick "communicated verbally with the officers and subsequent personnel that arrived on the scene" for the entire time after the officers initially attempted to speak to Elswick at his front door. (ECF No. 86 at 8.) However, Plaintiff has presented no evidence in support of either of these claims. Plaintiff cannot create a genuine issue of material fact based on completely unsupported allegations and denials.

However, this case involves deadly force, and this Court is cognizant that Elswick has no way to directly contradict the officers' statements. Under these circumstances, "a court must undertake a fairly critical assessment of the forensic evidence, the officer's original reports or statements and the opinions of experts to decide whether the officer's testimony could reasonably be rejected at a trial." *Ingle ex rel. Est. of Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006). "When there is contrary evidence, a court may not simply accept what may be a self-serving account by the police officer." *Id.* (internal quotations omitted); *see also Elliott v. Leavitt*, 99 F.3d 640, 644–45 (4th Cir. 1996) (noting that the officers' account in a lethal force case was consistent with the physical evidence). Other than the officers' testimony, Plaintiff has provided the expert opinion of Roy Taylor, a law enforcement officer. However, Plaintiff's expert does not challenge the defendant officers' factual allegations. Plaintiff's expert argues that the defendant officers unreasonably escalated the confrontation with Elswick when they chose to attempt to break into the front door and that the officers should have moved back to their cars when they saw that Elswick had a gun or should have lifted their police dog through the window of the door and allowed the dog to engage. (ECF No. 86 at 13.) Plaintiff's expert also took issue with the defendant officers' decision to deploy CS gas and argues that the officers should have used specialized resources like a SWAT team, hostage negotiators, or psychological services. (*Id.* at 10.) Plaintiff's expert's statements all relate to his opinion as to whether Sergeant Gaddy and Corporal Lyons each acted objectively reasonable under the law, which is a determination to be made by this Court. Thus, neither Plaintiff nor her expert has provided any evidence to contradict the defendant officer's factual statements here.

To determine if Sergeant Gaddy and Corporal Lyons each acted objectively reasonable, the Court will perform the three-part balancing test as established in *Graham v. Connor*. Considering the first *Graham* factor, the crime at issue was severe. The officers were attempting to question Elswick after his neighbor called 911 to report that he had shot into their trailer while they were home. Further, the officers learned that Elswick had an outstanding warrant for failure to appear and had prior firearms charges. While the arrest warrant alone would likely not be serious enough to be classified as "severe," the fact that Elswick was suspected of committing a violent crime against his neighbor weighs in favor of the officers.

As to the second *Graham* factor, the uncontested testimony indicates that both Corporal Lyons and Sergeant Gaddy feared for their lives at the time of the shooting and that Elswick posed an immediate threat to the officer's safety. In addition to being aware that Elswick was suspected of perpetrating a violent crime and had prior firearms charges, the defendant officers saw the barrel of a shotgun sticking up beside Elswick as he crouched behind the couch in his home. The only light in the home was from Corporal Lyons' gun–mounted flashlight and Elswick was hiding behind the couch wearing sunglasses and a toboggan. Further, Elswick continually yelled at the officers and told the officers that they were going to have to kill him because he was not going to come outside. Approximately five minutes after the officers spotted the gun, Sergeant Gaddy told Corporal Lyons that Elswick was going for the gun because Elswick moved the barrel of the gun down and moved his head to look around the couch. As the officers started to fire, Elswick stood up from behind the couch with the gun in his hands, took a step towards the officers, and the officers continued firing. These facts are undisputed and indicate that both Sergeant Gaddy and Corporal Lyons could have reasonably determined that Elswick posed a threat to the safety of both.

The situation was uncertain and rapidly evolving and the officers saw Elswick move the gun and begin to move towards them. Thus, the second *Graham* factor also weighs against Plaintiff.

Finally, under the third *Graham* factor, Elswick was actively resisting arrest and had refused to leave his home or speak to the officers for over three hours. The officers were not even able to get into the home at the time of the shooting because the front door had been barricaded shut. Elswick made it clear to the officers that he would not comply with their commands and even told them that they would have to kill him. The defendant officers asked Elswick to put down his gun, but he refused and instead picked it up and took a step towards the officers instead of complying with their commands to peacefully surrender. Again, his factor weighs against Plaintiff.

Deadly force is only justified where the reasonable officer had "sound reason to believe that a suspect poses a threat of serious physical harm to the officer or others." *Elliot*, 99 F.3d at 642 (citing *Tennessee v. Garner*, 471 U.S. 1 (1985)). Considering the totality of the circumstances here, Elswick was actively resisting arrest and refused to speak with officers about a serious and violent crime of which he was suspected of committing. He barricaded his front door shut and suggested that the officers would have to kill him as he was visibly sitting beside a shotgun. He then refused to comply with the officers' commands and grabbed the shotgun and took a step towards the officers in what the officers perceived as an attempt to aim the weapon at them. Plaintiff does not dispute any of these facts, and it is reasonable to conclude that Sergeant Gaddy and Corporal Lyons believed that Elswick posed a serious threat to their safety. Even when viewing the facts in the light most favorable to Plaintiff, a reasonable jury could not find for

Plaintiff. Thus, the Court **GRANTS** Sergeant Gaddy and Corporal Lyons' Motion for Summary Judgment on Plaintiff's Count I claim for excessive force.

### B. Count II for Municipal Liability

Plaintiff's Count II alleges the Kanawha County Sheriff's Department and Sheriff Rutherford violated § 1983 by establishing policies, procedures, customs and/or practices that show an indifference to citizen's constitutional rights and failed to adequately train and supervise its police officers. (ECF No. 1 at 9, ¶¶ 58–60.) However, the United States Supreme Court has held that "[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Thus, there can be no municipal liability under § 1983 unless Plaintiff can show that he suffered a constitutional violation. *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) ("[A] plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.") Here, this Court has found that Sergeant Gaddy and Corporal Lyons each acted with objective reasonableness in their actions and that no Fourth Amendment violation occurred. Plaintiff's Count II claims for municipal liability must also be rejected because there cannot be a finding that Plaintiff suffered a violation of his constitutional rights. Accordingly, the Court **GRANTS** summary judgment for the Kanawha County Sheriff's Department and Sheriff Rutherford on Plaintiff's Count II claim.

### C. Count III for Wrongful Death

Finally, Plaintiff in Count III asserts a claim for wrongful death in violation of W. Va. Code § 55–7–5 and 55–7–6 of West Virginia's Wrongful Death Statute. Defendants did not seek summary judgment on this claim. While Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions made by the parties, it also explicitly allows a district court to enter summary judgment *sua sponte*. Specifically, the rule provides that the Court must give "notice and a reasonable time to respond" before it may grant summary judgment for a nonmovant. Fed. R. Civ. P. 56(f). Further, the Fourth Circuit has held that

> the district court's power to grant summary judgment *sua sponte* is contingent on giving the losing party notice that it must come forward and defend its claim. While this notice need not necessarily be a formal document, it should provide the full ten days called for by Fed. R. Civ. P. 56(c). The notice must be sufficient to provide the losing party with an adequate opportunity to demonstrate a genuine issue of material fact. And it must, in view of the procedural, legal, and factual complexities of the case, allow the party a reasonable opportunity to present all material pertinent to the claims under consideration.

*Amzura Enterprises, Inc. v. Ratcher*, 18 F. App'x 95, 103–04 (4th Cir. 2001) (citing *United States Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n*, 873 F.2d 731, 735 (4th Cir. 1989)).

As discussed above, the Court has found that Corporal Lyons and Sergeant Gaddy each acted with objective reasonableness in their actions and that no Fourth Amendment violation occurred. As a result, the Court also dismissed Plaintiff's municipal liability claims against the Kanawha County Sheriff's Department and Sheriff Rutherford. Further, Plaintiff has not alleged any other wrongful conduct that could serve as the basis for her wrongful death claim. Accordingly, Plaintiff is hereby put on **NOTICE** that the Court intends to enter summary judgment on Plaintiff's Count III claim for wrongful death for Defendants Kenneth Gaddy, Christopher Lyons, the Kanawha County Sheriff's Department, and John Rutherford in accordance with this

Memorandum Opinion and Order on **Monday, September 6, 2021**. Plaintiff may file papers in response or objections in the interim.

Further, because this *sua sponte* summary judgment ruling will dispose of this case in its entirety, both the pretrial and final settlement conference currently scheduled for September 1, 2021, and the trial currently scheduled for September 14, 2021, are **CONTINUED** until further notice from this Court.[3]

### IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Kanawha County Sheriff's Office and John Rutherford's Motion for Summary Judgment, (ECF No. 83), and **GRANTS** Defendants Kenneth Gaddy and Christopher Lyons' Motion for Summary Judgment, (ECF No. 112).

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:   August 27, 2021

_____
THOMAS E. JOHNSTON, CHIEF JUDGE

---

[3] Also pending before the Court is Defendants Kenneth Gaddy, Christopher Lyons, the Kanawha County Sherriff's Office, and John Rutherford's Motion for Leave for Alternative Attendance. (ECF No. 115.) Defendants move to allow their claim representative to appear via telephone or other electronic means at the pretrial conference. However, the pretrial conference has been continued generally. Accordingly, the Court **DENIES** Defendants' motion, (ECF No. 115).